Our third case for argument this morning is United States v. Nixon. Not the President. Pardon? Not the President. Thank God. Mr. Wolfe. Good morning, and may it please the Court. My name is John Wolfe, and my co-counsel Kayla Doyle and I represent appellant Sarah Nixon on Illinois 7-11 licenses through the Bloom Legal Clinic at Northwestern University School of Law. We ask this Court to reverse the judgment of the District Court for three primary reasons. First, because the Court erred in narrowly interpreting the statutory reference to domestic violence against Ms. Nixon. Second, because the District Court wrongly instructed the jury on two occasions. And third, because the District Court's multiple evidentiary errors individually and cumulatively prejudiced Ms. Nixon and warrant reversal. I would like to discuss each of these errors individually, but before I do so, I would also like to highlight and emphasize the comprehensive nature of these errors together and the cumulative effect they had on Ms. Nixon's defense. From the very beginning of the case, Ms. Nixon's defense was sliced into pieces and pieces of her, substantive pieces of her defense were thrown away. All the while, the government's burden was lightened, resulting in a trial that was a mere formality. This all started at the very beginning when the statutory term domestic violence was far too narrowly interpreted by the District Court. This term was left undefined by Section 1204, the statute under which Ms. Nixon was tried and convicted. And the Court interpreted that reference to domestic violence in the statute's affirmative defense against Ms. Nixon far too narrowly. We ask this Court to recognize that the term domestic violence, as found by the Supreme Court in United States v. Castleman, is a term of art. That can include things that one might not consider to be violent in and of itself, but when considered in a pattern, it certainly rises to the level of domestic violence. Specifically, the Court refused to allow Ms. Nixon to present evidence that she herself had been the victim of domestic violence in the form of emotional, psychological, and financial abuse, and instead would not allow her to even present that evidence to the jury. This violated her statutory right to an affirmative defense under Section 1204c.2, which is the second of three affirmative defenses provided by the statute. The District Court erred in narrowly interpreting this reference to the only physical acts of domestic violence, and in doing so it pointed to after-enacted legislation that went out of its way to actually define the term narrowly, as opposed to the statute before the Court today, which leaves the term undefined. And it set aside a lot of other references that we think are relevant here. Chief among them is the Hague Convention, which is particularly referenced in 1204d, meaning that when Congress wrote Section 1204, it intended it to be interpreted alongside the Hague Convention, and the Hague Convention does provide an affirmative defense for the return of children who have been experienced psychological trauma. And so it makes little sense that Congress would recognize psychological abuse and trauma in one instance, but then in a statute that directly references that earlier statute, it decided not to. The references to other statutes that go out of their way to specifically and narrowly define the term domestic violence are in opposite in that light. In addition to that, Your Honor, even if this Court were to find that it cannot determine the meaning of domestic violence, that ambiguity simply weighs in favor of Ms. Nixon as a criminal defendant under the rule of lenity. More than that, Your Honor, the District Court also erred when providing multiple instructions to the jury. There are two here that we contest before the Court. The first is that the District Court never required the jury to reach unanimity in its verdict. If you look specifically to Section 1204a, it defines three specific and different crimes, removing a child from the United States, attempting to remove a child from the United States, and retaining a child outside of the United States. Counsel, has this line of argument been preserved for review? Was it even preserved for decision in the District Court? It was, Your Honor. Ms. Nixon's trial counsel proffered a specific unanimity instruction. No, unfortunately, that's not how you preserve a claim like that. Federal Rule of Criminal Procedure 12b3b Roman F1 requires the presentation before trial of any contention that multiple crimes have been charged in one count. This was a one-count indictment, and you say it charged three crimes. Well, that's a claim of duplicity. And the rule expressly requires that contention to be raised before trial and says that it can't be raised later unless there was good cause for not raising it before trial. As I understand what happened here, it was not raised before trial, and you have never argued that there was good cause for deferring it to late in the trial. Well, Your Honor, courts have been The reason for requiring it to be raised before trial is so that if the district judge agrees with it, the United States can appeal. Well, understood, Your Honor. But we would point to the fact that courts have regularly remedied these types of duplicitous indictments through specific unanimity instructions. So even after the fact, they can still be remedied. The rule is clear that the claim is forfeited if not raised before trial. You couldn't write a clearer rule unless there is good cause. So it wasn't raised before trial. I look in your brief for an argument that there was good cause, and there's none there. Understood, Your Honor, and I do not particularly recall whether it was raised before trial. No, it was not raised before trial. We checked. Thank you, Your Honor. But in addition to that, there was also another error that the district court made when instructing the jury, and that was when it defined as a matter of law that Ms. Nixon's ex-husband, G.G., had parental rights as a matter of law. The statute itself, 1204, goes out of its way to specify. There's an ambiguity in your brief about that. Are you contending that this is a jury question or only that it is a question for the judge, but the judge gave the wrong answer? In the first instance, Your Honor, we contend that this would be a jury question. It's an application of the law to the facts. Of course, I didn't see that argument in your brief. Even in the alternative, Your Honor. Is it in your brief? Did I miss it? It is in our brief, and it's specifically drawn out in our reply brief, Your Honor, that this is a question that the jury should have been asked to consider. Did the defense at trial ask the judge to send this question to the jury? Your Honor, trial counsel was sort of shoehorned into a position based on the district court's earlier statements and referrals to this as a matter of law. And so the district court—excuse me—in an effort not to frustrate the district court, the trial— No, that's never a good reason for not making your argument. If you think something is a jury question, you have to tell the judge. Your Honor, trial counsel did object to this jury instruction as a matter of law, but even if this court were to consider it as a matter of law, the district court's statutory interpretation is simply incorrect. The statute goes out of its way to specifically define what it means by parental rights, and it refers specifically to physical custody. Ms. Nixon's ex-husband was operating pursuant to a no-contact order from a state court in Illinois, which stated that he, by the definition of the statute, did not have parental rights. He had no physical custody over the child. And if he didn't have physical custody over the child, there were no parental rights that Ms. Nixon could have frustrated at the moment she left the United States for her home in Canada. And so even if this court were to consider that a matter of law and were to consider the jury determination to be waived by Ms. Nixon's trial counsel, even as a matter of law, a strict statutory interpretation to be reviewed by this court de novo, the district court was incorrect in its understanding of what parental rights meant under the statute. And not only that, Your Honor, we also contest a variety of the evidentiary rulings that the district court made. There are sort of two buckets of testimonial evidence that Ms. Nixon proffered, and chief among them is witnesses who would have testified to the abuse allegations that were made by Ms. Nixon's daughter against Ms. Nixon's ex-husband. These include the daughter's pediatrician, her kindergarten counselor, and another counselor that she was referred to after these allegations first surfaced. And all of these individuals would have testified, had they been allowed to, that they had diagnosed the child as an abuse victim, that they believed that the child was telling the truth, that she had been abused, and that Ms. Nixon was aware that they had diagnosed her. And that goes squarely to the reasonableness of her belief that the child was abused. And that goes, in turn, to Ms. Nixon's affirmative defense that she and her child were fleeing an incident or pattern of domestic violence under 1204c2. And so had these individuals been allowed to testify, they would have testified to the fact and boosted Ms. Nixon's own testimony and helped the jury to realize that she certainly had a reasonable belief that she was fleeing domestic violence. When one's child's pediatrician and counselor tells you that your child is being abused, you tend to believe that. And that would have been very informative and very probative for the jury to have heard when determining whether or not Ms. Nixon had a reasonable belief that abuse was being suffered. And not only that, Your Honor, but Ms. Nixon also sought to introduce evidence that she suffered from PTSD. She offered three witnesses on this. Those were very curtailed to the point where only one— She suffered from what? Post-traumatic stress disorder, Your Honor. You heard my request earlier. And I apologize for not— Use real words. Absolutely, Your Honor. Ms. Nixon was diagnosed by multiple doctors with post-traumatic stress disorder, and her argument was that— And why would that be relevant to anything? It's relevant, Your Honor, because the district court determined that the relevant standard here was whether or not Ms. Nixon reasonably believed and had the perception that her daughter was being sexually abused. And a victim, as these experts would have testified, a victim of post-traumatic stress or someone suffering with post-traumatic stress disorder would more readily perceive these allegations to be true. And it would help the jury to contextualize Ms. Nixon's reasonable belief and boost the reasonableness of her belief. And at the end of the day, Ms. Nixon's only witness was herself and one individual who was allowed to testify in a very curtailed manner about Ms. Nixon being nervous, but nothing about her post-traumatic stress disorder. And so with that, Your Honor, we would ask this court to reverse on a multitude of errors, if not individually, then at least cumulatively, and I would like to reserve the remainder of my time for rebuttal. Thank you. Certainly, Mr. Wolf. Mr. Glazer. May it please the Court. To briefly address the meaning of the term domestic violence in the defense in Section 1204, it's important to realize that even in light of the Supreme Court's gloss in Castleman, the term that is included in the statute is the term domestic violence. Congress could have used other terms such as abuse that are more capacious and could include emotional abuse, psychological and financial abuse, et cetera. However, Congress chose to use the term domestic violence. Now in Castleman, to be sure, the Supreme Court said that domestic violence is a term of art that doesn't necessarily require the same quantum of force that is required by the term violence as generally used. But again, Castleman was dealing with the quantum of force at issue, not with the distinction between physical and emotional abuse. And there's no suggestion in Castleman or in any of the other Supreme Court case law that the term domestic violence can be understood to include all forms of emotional and psychological abuse. So just looking at the plain meaning of the term as used in the statute, this Court ought to conclude that the District Court was correct in deciding that it was limited to physical violence. However, we've also cited a number of other, many things beyond the plain meaning of the statute, the way that Congress understood the term domestic violence at the time as defined in other statutes, how it subsequently used the term. All of those support the District Court's reading of the statute. Judge Easterbrook, turning to the second point, Judge Easterbrook has pointed to an argument that I unfortunately did not raise in my brief with respect to Rule 12, that the proper way to preserve a duplicity argument is to raise it before trial. Not the proper way, the mandatory way. That's correct, Your Honor, the mandatory way. But of course, your brief doesn't mention this, and therefore forfeits the forfeiture. Yes, Your Honor. Is this the sort of situation in which a court can or should relieve the prosecutor of the forfeiture? Your Honor, it is a situation in which the court can, and I think that the court should. It's certainly the easiest way to resolve this. However, I think that even if the court were to conclude that we have forfeited the forfeiture or waived the forfeiture. No, you haven't waived the forfeiture. You forfeited it. Correct. If we forfeited the forfeiture, Your Honor, still under any standard of review, the defense's argument that there's three separate offenses in the statute, in effect means that the government should have charged three separate counts in the indictment and Ms. Nixon could have been exposed to conviction and sentencing on three separate counts. That is, the evidence supports her attempt to remove her child from the United States, her removal of her child from the United States, and the retention of her child outside the United States. And I don't think most defendants who have been charged with a violation of Section 1204 would see it as fair for them to be charged with three separate offenses, and I don't think that that's what Congress was intending when it passed the statute. There's nothing, there's no cases that the defense has pointed to that would suggest that this, that the retention or removal or retention are two separate crimes or three, including attempt. Is one of them all-inclusive? I'm sorry, Your Honor? Is one of them all-inclusive? Like, okay, retaining, you have to have the other two? Your Honor, no. It's not all-inclusive because there are situations in which a child can be validly removed from the United States or removed without intent to obstruct parental rights and then later retained outside the United States. So they are not all-inclusive. However, Congress included them all in order to cover all the situations that could arise. With respect to the jury instructions, first of all, the defense did not raise below, and I didn't believe from reading their brief, had raised the argument that the issue of parental rights should have been submitted to the jury. And, in fact, in the district court, this is at page 5 of the transcripts of December 20th, the defense counsel said, I quote, whether he had parental rights is a matter of law. So both below, they conceded below that it was a matter of law, and on appeal, to the extent they raised the argument at all, they did so very briefly, and so my brief did not devote much time to whether or not this should have gone to the jury. But as I also pointed out in my brief, even if it had gone to the jury and the jury had been properly instructed, the jury would have agreed with the district court in this case that Gigi had parental rights at the time that the minor child was removed from the United States. The statutory definition says that parental rights can include visitation rights, and the evidence showed that the father, Gigi, had access to his child up until January of 2015, and that that access was temporarily limited to visitation under the supervision of Dr. Appleton up to the point of the custody trial that eventually took place in July 2015. But at no point in the record in the state court was there any suggestion that his parental rights had been removed, that he had been deprived of his parental rights, and at the very least he had those visitation rights under the supervision of Dr. Appleton, and that is sufficient to satisfy the statutory requirement. Turning then to the alleged evidentiary errors in this case, with respect to the post-traumatic stress disorder diagnoses, as the government points out in its brief, to the extent post-traumatic stress disorder is relevant at all to Ms. Nixon's reasonable belief that she needed to flee the country, it is very minimally relevant. And in fact, the government's position is that the proper question is not whether or not she reasonably believed that an incident or occurrence of domestic incidents or pattern of domestic violence had occurred, but rather not whether it actually had occurred. And under the government's understanding that we sought to follow in the district court and were prevented from doing so, that then post-traumatic stress disorder would have simply no relevance at all to her defense. And finally, and I think this is probably the more challenging of the two issues, the district court's exclusion of abuse evidence, of repetition of the minor child's statements to a counselor and doctor about the alleged abuse. The defense points in their reply brief to the conclusion of those proffered experts that the minor child had not been coached. And I think if this court were to look specifically at that small aspect of the proposed testimony, that could be potentially relevant, particularly if the proper standard is, as the government views it, not her reasonable belief, but whether, in fact, the abuse occurred. However, the evidence of coaching was not something that was discussed at any length in the district court. But primarily in the district court, Ms. Nixon sought to have these witnesses come in and simply parrot the hearsay statements of the minor child that she had been the victim of abuse. That's about all she had, I guess, is what it comes down to. That's correct. That's correct, Your Honor. It was a criminal trial, so is that maybe not very good, but is that her best evidence? Your Honor, it potentially was her best evidence. And certainly to the extent that they did something other than simply parrot hearsay and testified to their own conclusions about whether abuse occurred that arose from something other than the minor child's statements, then that would indeed corroborate Ms. Nixon's view. She did parrot. There was no independent assessment. Everything, I don't know, they thought she was telling the truth, I guess. Your Honor, yes. And if the focus in the district court had been on their independent conclusions that she was telling the truth, then I think there would have been a much better case for relevance here. But in the district court, the thing that the defendant wanted to admit was they wanted those witnesses to come in and testify. I concluded, based on her statements that she was sexually abused, that she was sexually abused. So the focus was not on their independent assessment. But in any event, the district court did not abuse its discretion, and any error was harmless. And the reason for that is that ultimately, particularly under the defense's theory, that whether the abuse occurred is actually not the issue, but rather she reasonably believed the abuse occurred, statements by those witnesses that they concluded that the minor child had been abused would have done nothing more than confirm the testimony of the minor child that she was coached to say that she had been abused. In other words, that was perfectly consistent for those witnesses to testify, this is what she told me, this is what I concluded. That's perfectly consistent with coaching. And the minor child testified in this case. The jury also was able to hear from the defendant. And the jury could draw the conclusion that the minor child was telling the truth, that she had been coached to make these accusations of sexual abuse. There's also other consistent evidence that this was, in fact, coaching. For example, one of the reporting officers who heard this recording of the minor child's alleged statements, noted that Ms. Nixon was mouthing along with the recording that allegedly had just been made of her minor child making these accusations. She was mouthing along with that recording for approximately one minute. There was also the evidence that the Department of Child Services and a number of police departments had decided not to pursue charges against the father, that they believed that these accusations were unfounded. So all of the evidence taken together shows that even if the district court should have admitted a small slice of the testimony of the excluded witnesses, that that exclusion was harmless. And if the court has no further questions, we'd ask the court to affirm. Thank you, Mr. Glazer. Ms. Doyle, anything further? Your Honors, my name is Kayla Doyle, continuing argument on behalf of Ms. Sarah Nixon. I have three primary points to make on rebuttal. The first goes to the domestic violence definition. As the government noted, Castleman is one of the Supreme Court's leading cases on domestic violence, and as we noted, they do refer to it as a term of art there. But importantly, when they go into the violent aspects, they were interpreting a statute that specifically dealt with violence as a subset of domestic violence. Here, we are not dealing with such a definition. It's undefined, and in fact, it's notable that the government, that in drafting the statute, Congress didn't use a more restrictive term, such as assault, as they sometimes do in statutes. All of this goes to ambiguity, and therefore the rule of lenity should apply. Second, we would encourage this court to reach and address to our favor the jury instruction issues. As you mentioned, Your Honor, the government did forfeit this argument, and it would be a miscarriage of justice to not reach this error, and so we ask that this court does reach this on the merits and rules in our favor. And finally, to the evidentiary errors, which really went to the heart of Ms. Nixon's defense. At its heart, this was a case that ultimately turned on her credibility, and essentially, she was her only evidence, as you noted, Your Honor. All of her witnesses to the abuse allegations were excluded, and importantly, the government noted there were three witnesses to that, Dr. Butow, the pediatrician, Deborah Poblano, and Megan Murphy, who were both counselors, who had treated SGN and found her to be a victim of sexual abuse. Not only that, but they reported these findings, and two of these witnesses, Butow and Murphy, specifically looked at the question of coaching and found that there was no coaching, which would have been particularly helpful for Ms. Nixon to rebut the officer's testimony that he thought she was mouthing along with the recording of her daughter's statement. Despite the fact that she has always maintained she was saying, oh, my God, under her breath. Importantly, as well, these witnesses did not say they were simply going to parrot SGN's statements. In fact, some of these treatments involved looking more at her behavior and her manifestations of the abuse and how that lined up with what they would typically see in a sexual abuse victim. This was not a case of these doctors and counselors simply saying, this is what I heard. This involved multiple counseling sessions with interviews of the child victim and with observations of the child victim. The district court not only wouldn't allow any statements as to what they heard from the child victim, but they wouldn't even allow them to testify as to their observations of what she had done. And these errors completely deprived Ms. Nixon of any evidence beyond her own word that these abuse allegations happened, which given the weight of the government's evidence, she simply would not have been able to counter. This irrevocably prejudiced Ms. Nixon, essentially reducing her case to mere formality. And for these reasons, your honors, we ask that you reverse. Thank you. Thank you very much, Ms. Doyle. Mr. Wolf, Ms. Doyle, the court appreciates your willingness to accept the appointment and the willingness of the legal clinic at Northwestern to do so. Thank you very much for your assistance to both the court and your client. The case is taken under advisement.